## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. 19-CR-3336 MV

FRANCISCO DIAZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Mr. Diaz's Motion to Dismiss Based on a Violation of His Constitutional Right to a Speedy Trial or in the Alternative for Violation of the Speedy Trial Act. Doc. 143. The government filed a Response on October 20, 2023 [Doc. 157] and Mr. Diaz filed a Reply on November 12, 2023 [Doc. 161]. The Court, having considered the briefs and relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED** as follows: the indictment will be dismissed without prejudice.

## BACKGROUND

Mr. Diaz was initially arrested on the instant charges on September 3, 2019. Doc. 1. On September 24, 2019, Mr. Diaz was charged by indictment with Possession with Intent to Distribute 500 Grams and More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and Possessing a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Doc. 12. Judge B. Paul Briones granted Mr. Diaz pretrial release on September 9, 2019. Doc. 10. On October 23, 2019, Mr. Diaz's original attorney, Michael Davis, filed the first unopposed motion to continue. Doc. 18. This motion was granted on October 30, 2019. Doc. 19. On November 15, 2019, Mr. Diaz retained a new attorney, Billy R. Blackburn. Docs. 20, 21. On

1

January 7, 2020, Mr. Blackburn filed a second unopposed motion to continue. Doc. 24. This motion was granted on January 8, 2020, and the trial was reset for April 27, 2020. Doc. 25.

In response to the coronavirus pandemic, on March 13, 2020, the District Court issued Administrative Order 20-MC-0004-9, which ordered that effective March 16, 2020, all jury trials scheduled before April 10, 2020 be continued pending further order of the Court. Administrative Order 20-MC-0004-9, at 1, ¶ 1. As part of the Administrative Order, the Court ordered that continuances thereunder would be excluded under the Speedy Trial Act. *Id.* The Court extended its original stay of proceedings six more times on March 31, 2020 (Administrative Order, No. 20-MC-00004-15), April 27, 2020 (Administrative Order No. 20-MC-00004-17), May 19, 2020 (Administrative Order No. 20-MC-00004-19), July 6, 2020 (Supplemental Administrative Order No. 20-MC-00004-27), November 18, 2020 (Supplemental Administrative Order No. 20-MC-00004-39), December 21, 2020 (Supplemental Administrative Order No. 20-MC-00004-49), and January 31, 2021 (Supplemental Administrative Order No. 21-MC-00004-4). The Court reinstated the stay in response to the Omicron variant on January 14, 2022. Administrative Order 22-MC-00004-10.

On April 6, 2020, Mr. Blackburn filed Mr. Diaz's third unopposed motion to continue. Doc. 28. In support of this motion, Mr. Blackburn stated that he needed time to review additional discovery, which was "voluminous in size and detail." *Id.* at 2. The motion further stated that in light of the COVID-19 pandemic, during February and March of 2020, "counsel was consumed with making emergency arrangements for his youngest daughter to return from a six-month teaching experience in Bangkok, Thailand." *Id.* The motion also generally noted the difficulties of working from home during the pandemic and stated that "we are currently not living under normal

circumstances and a continuance is necessary to safely and adequately address the defendant's constitutional and statutory rights during this pandemic emergency." *Id.* at 3.

In each of the successive motions to continue, Mr. Blackburn stated that due to the volume of discovery and the difficulties presented by the COVID-19 pandemic, a continuance would be necessary for the defense to file pretrial motions, negotiate a plea deal, and otherwise investigate the case. *See* Doc. 33, 35, 38, 41, 45, 48. In addition to these general concerns, Mr. Blackburn notified the Court of several family emergencies relating to the health of family members and his own health. On June 29, 2020, in a fourth unopposed motion to continue Mr. Blackburn stated that he was in Oklahoma City addressing a family emergency. Doc. 33 at 4. On October 5, 2020, Mr. Blackburn stated in a fifth unopposed motion to continue that his uncle had passed away and that "the emotional toll that this matter has taken on counsel's 90-year-old mother and the remainder of the family has been overwhelming." Doc. 35 at 4. He further stated that "counsel also had oral dental surgery and is still recovering." *Id.* On December 14, 2020, Mr. Blackburn filed Mr. Diaz's sixth unopposed motion to continue, stating that a continuance was necessary because "on Thursday, December 10, 2020 counsel had an in-home accident. Counsel accidentally fell and was rushed to the emergency room with a severe broken foot." Doc. 38 at 4. On April 23, 2021, Mr. Blackburn filed a seventh motion to continue, stating that he had been "consumed since late February 2021, with a private matter concerning counsel's mother." Doc. 41 at 4. Along with family illness, Mr. Blackburn informed the Court that his assistant had recently resigned and that "counsel has literally been doing everything possible to keep his office running while trying to hire a new employee who has some legal experience and training." *Id.* On August 9, 2021, Mr. Blackburn filed an eighth unopposed motion to continue, citing continuing problems stemming from his assistant's resignation. Doc. 45 at 4.

On September 13, 2021, Mr. Blackburn filed Mr. Diaz's ninth unopposed motion to continue and notified the court that "Counsel for Defendant Diaz has been consumed since early August 2021 through today's date with a family emergency concerning his 91-year-old mother." Doc. 47 at 2. He further stated that "Counsel has been overwhelmed by this matter and respectfully requests time to fully attend to this family matter." *Id.* at 3.  On December 27, 2021, Mr. Blackburn filed a tenth unopposed motion to continue, citing the need to address another case that had a firm trial date. Doc. 53. In five of the motions, counsel represented that "Defendant Diaz agrees with this continuance and will not be prejudiced by this continuance." *See* Docs. 28, 38, 41, 45, 47, 53.

On August 15, 2022, the United States and Mr. Blackburn filed a joint motion to continue. Doc. 94. The motion stated that the United States had recently received information from the Santa Fe County Sherriff's Office regarding Mr. Diaz, including a report and video recordings. *Id.* at 2. The United States agreed that counsel and Mr. Diaz should be afforded an opportunity to review the recordings. *Id.* Separately, Mr. Blackburn represented in the joint motion that Mr. Diaz had close family members who had recently tested positive for COVID-19 and that Mr. Diaz was not vaccinated and had been in close contact with those family members. *Id.* at 1. Mr. Blackburn further stated that he himself was exhibiting symptoms of COVID-19 and was taking an at-home test. *Id.* He added that he had had two family emergencies in the last two weeks, one of which had required him to travel out of state, and that his elderly mother had recently been moved to Mr. Blackburn's home and required constant care. *Id.* The motion stated that "it is unclear whether her condition will stabilize in the near future." *Id.*

On November 30, 2022, the Court held a pretrial conference for the trial, which was scheduled to begin on December 5, 2022. Doc. 104. Mr. Diaz appeared via Zoom and Mr. Blackburn requested a continuance because Mr. Diaz had been to urgent care and tested positive

for Influenza A. Doc. 153 at 8:16–21; Doc. 161 – Exhibit A. Mr. Blackburn added that Influenza A could last "anywhere from four to seven days, and it takes up to two weeks to recover." *Id.* at 8:22–24. The trial was continued until April 11, 2023.[1] The Court held another pretrial conference on March 23, 2023, during which Mr. Blackburn alerted the Court to a potential scheduling problem, citing his elderly mother's health situation. Mr. Blackburn ensured the Court that he had a backup plan so that he would be able to attend the trial.  Doc. 122 at 1.  The Court asked Mr. Blackburn if Mr. Diaz had any concerns about proceeding to trial with Mr. Blackburn as his attorney and he responded that he did not. Doc. 157 at 17.

On April 4, 2023, one week before the trial was scheduled to begin, Mr. Blackburn filed an opposed motion to withdraw from the case. Doc. 118. In the motion, Mr. Blackburn referred to his family problems and stated that "counsel has discussed these family medical issues and the possibility of counsel withdrawing from the case in detail with the Defendant Francisco Diaz. Mr. Diaz stated that he wants counsel to be 'on his A game for trial' and then stated that he knows that counsel at this time is not on his 'A' game.'" Doc. 118 at 2. After a contested hearing, the Court granted Mr. Blackburn's motion to withdraw on April 5, 2023. Doc. 150. On April 6, 2023, the Court entered a text-only order vacating the existing trial date. Doc. 121. Mr. Blackburn did not file a motion to continue in conjunction with his motion to withdraw and the Court never put on the record its reason for continuing the trial on April 6, 2023. *Id.* Current counsel for Mr. Diaz entered her appearance on May 15, 2023. On August 11, 2023, the Court filed a trial notice and set a new trial date for January 22, 2024. Doc. 136.

---

[1] The government alleges that on December 4, 2022, the day before the trial would have occurred, Mr. Diaz attended a public basketball game in Santa Fe, New Mexico. Doc. 157. Counsel for Mr. Diaz filed his test results from November 30, 2022, which state that Mr. Diaz had "suspected COVID-19 virus infection, nasal congestion, Influenza A." Doc. 61-Exh. A.

## DISCUSSION

### I.      Mr. Diaz's Constitutional Right to a Speedy Trial Has Not Been Violated.

The defense argues that Mr. Diaz's Sixth Amendment right to a speedy trial has been violated and asks the Court to dismiss the indictment with prejudice. For the following reasons, the Court finds that Mr. Diaz's Sixth Amendment right to a speedy trial has not been violated and that dismissal thus is not warranted on this basis.

The Sixth Amendment guarantees that ''[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial.'' U.S. Const. amend. VI. The remedy for a speedy trial violation is dismissal of the case. *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014). In *Barker v. Wingo*, the Supreme Court identified four factors that courts must assess in determining whether the right to a speedy trial has been violated. 407 U.S. 514 (1972). These factors are (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530. ''No one factor is necessary or sufficient to conclude a violation has occurred.'' *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009). Instead, the court must consider all of the factors together, ''along with other relevant circumstances.'' *Id.*

### A.      Length of Delay

The first factor of the *Barker* balancing test is the length of delay. *Barker*, 407 U.S. at 530. ''The length of delay is a threshold factor. Only if the delay is presumptively prejudicial need we inquire into the remaining *Barker* factors.'' *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995) (citing *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994)). The Tenth Circuit has recognized that ''[d]elays approaching one year generally satisfy the requirement of presumptive prejudice.'' *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.2 (1992)).

6

The speedy trial right attaches at the earlier of either arrest or indictment, and the length of delay is measured from that point. *Batie*, 433 F.3d at 1290. Here, Mr. Diaz was arrested on September 3, 2019. The delay in this case thus has exceeded four years and, accordingly, is presumptively prejudicial. *Id.*

Once a defendant establishes presumptive prejudice, the Court "must examine 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim,' as well as the remaining factors. *Batie*, 433 F.3d at 1290 (quoting *Doggett,* 505 U.S. at 651-652)*. "*The length of delay depends on "the peculiar circumstances of the case, and "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Batie*, 433 F.3d at 1290 (citations omitted). For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.*

Mr. Diaz is charged in a two-count indictment with Possession with Intent to Distribute 500 grams and More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(C)(1)(A)(i). Doc. 12. Although the government has produced almost 6,000 pages of discovery and conducted several mobile device extractions, both parties concede that the facts of the case are not complicated. Doc. 143 at 4; Doc. 157 at 21. In *Margheim,* the Tenth Circuit found that a delay of 23 months weighed "entirely" in the defendant's favor in a case with 30 co-defendants and over 150 motions in limine. 770 F.3d 1326. By comparison, a delay of over four years goes well beyond "the bare minimum needed to trigger judicial examination" for a case with a single defendant and a two-count indictment, regardless of the amount of discovery produced by the government. *Doggett,* 505 U.S. at 652. Given the lengthy delay and relative simplicity of the case, the factor of delay weighs in favor of finding that Mr. Diaz's right to a speedy trial has been violated.

### B.    Reason for Delay

The second *Barker* factor is the reason for the delay. *Barker*, 407 U.S. at 530. In conducting its analysis, the Court must assess the "degree to which the government caused the delay." *Batie*, 433 F.3d at 1291. The government's motive in causing the delay is particularly relevant to this factor. *Id.* Delays deliberately caused in an attempt to gain strategic advantage weigh heavily against the government. On the other hand, delays due to negligence or crowded court dockets weigh less heavily against the government. *Id.*; *see also United States v. Seltzer*, 595 F.3d 1170, 1178–79 (10th Cir. 2010). As a matter of Sixth Amendment jurisprudence, "[d]elays attributable to the defendant do not weigh against the government." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). For example, the government will not be held accountable for delays resulting from continuances or motions filed by the defendant. *See, e.g., Batie*, 433 F.3d at 1291 ("[C]ontinuances and other motions filed by the defendant do not weigh against the government."); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) (finding that the defendants caused the delay where they filed "multiple continuances with the district court and argued that they would be prejudiced if the court refused to grant them"); *United States v. Larson*, 627 F.3d 1198, 1209–10 (10th Cir. 2010) (finding that the defendant caused the delay where he requested six continuances).

Here, a portion of the delay occurred as a result of the COVID-19 pandemic. The Court continued and suspended criminal jury trials over several relevant periods. Just prior to Mr. Diaz's first scheduled trial date of April 27, 2020, the Court issued its March 31, 2020 Administrative Order continuing all jury trials pending further order of the presiding judge. Administrative Order, No. 20-MC-00004-15. This stay of proceedings was continued several more times over the course of a two-year period, resulting in the suspension of jury trials from March 16, 2020 through July

30, 2020, November 18, 2020 through February 28, 2021, and January 14, 2022 through February 13, 2022. As other courts have recognized, the exigencies of the COVID-19 pandemic necessitated the continuation of jury trials, including Mr. Diaz's trial. *See, e.g. United States v. Woolard,* No. CR18-217RSM, 2020 WL 6528865, at *2 (W.D. Wash. Nov. 5, 2020) ("In any event, the arrival of the COVID-19 pandemic would have made any jury trial impossible from March to the present day."); *United States v. Tapp,* No. CR 19-35, 2020 WL 6483141, at *2 (E.D. La. Nov. 4, 2020) ("[T]he safety of witnesses, court personnel, jurors and the parties in the midst of a global pandemic justified the continuance of jury trials."); *United States v. Santillanes,* No. 20-CR-1441, 2022 WL 7497291, at *5 (D.N.M. Oct. 13, 2022) (finding that delays from November 18, 2020 to February 28, 2021 were justified due to exigent circumstances caused by the pandemic). Thus, the Court finds that from April 27, 2020 through July 30, 2020, November 18, 2020 through February 28, 2021, and January 14, 2022 to February 13, 2022, the delay was justified.

With respect to any further delay, the defense argues that responsibility ultimately rests on the Court and the government. Doc. 161 at 10. Specifically, the defense argues that the delay is attributable to "the personal problems of [Mr. Diaz's] former counsel and the government, on a few occasions, for delaying in turning over evidence." Doc. 143 at 6. Due to the numerous and continuing personal problems of Mr. Diaz's former counsel, the defense argues that the Court and the government should have intervened to fulfill their "affirmative constitutional obligation to try the defendant in a timely manner." *Id.* (quoting *United States v. Brown,* 169 F.3d 344, 349 (6th Cir. 1999)). While it is true that much of the delay was occasioned by former counsel's personal problems (which ultimately caused him to withdraw at the eleventh hour), the defense does not cite to, and the Court has not found, any case law to suggest that the Court and the government have an affirmative obligation to intervene in a defendant's relationship with his attorney to

prevent the undue delay of trial. Indeed, in at least five of the motions to continue filed by former counsel, counsel represented that "Defendant Diaz agrees with this continuance and will not be prejudiced by this continuance." *See* Docs. 28, 38, 41, 45, 47, 53. The defense has provided no legal basis to support the proposition that the Court was permitted, much less required, to look past this representation and intervene in the attorney-client relationship. Thus, in keeping with the Tenth Circuit's precedent, the Court finds that none of the 11 total motions to continue filed by former defense counsel weigh against the government. *Banks*, 761 F.3d at 1183; *Larson*, 627 F.3d at 1209–10.

Nevertheless, continuances granted at the request of Mr. Diaz were not the sole reason for delay in this case. Contrary to the government's assertion that "none of the delay in this case is attributable to the United States," Doc. 157 at 22, there was one joint motion to continue the trial. Doc. 94. The motion stated that the United States had, three days prior to the filing of the motion, received information from the Santa Fe County Sherriff's Office regarding Mr. Diaz, including a report and video recordings. *Id.* at 2. The United States agreed that counsel and Mr. Diaz should be afforded an opportunity to review the recordings. *Id.* Even though the delay from this motion to continue is partially attributable to the government, the motion represents a prompt effort by the government to provide discovery rather than negligence or a deliberate delay manufactured to gain a strategic advantage. *Batie,* 433 F.3d at 1291. Accordingly, the reason for this delay does not weigh against the government. *Id.*

Lastly, the defense filed a supplement to its motion to dismiss, noting that "on November 7, 2023 and December 5, 2023, the defense received evidence from the government that it has continued to investigate by securing search warrants for telephones and for Mr. Diaz's electronically stored data with Apple." Doc. 164 at 1. The defense argues that "the Court must

consider the government's continued employment of investigative techniques as recent as November 2023, in securing search warrants, as irrefutable evidence the government has intentionally delayed the trial by not ensuring that the defendant was tried promptly." *Id.* at 3. Of course, the government may not deliberately delay trial "exclusively for the convenience of the state." *Dickey v. Florida,* 398 U.S. 30, 38 (1970). However, the defense does not cite to any law that requires the Court to consider the government's continued investigation efforts as evidence of deliberate delay for the purpose of gaining tactical advantage. While the government may have benefited from the delay, this does not, *ex post,* lead to the conclusion that the government deliberately caused the delay in the first place. Thus, the reasons for delay in this case are primarily attributable to the defense and this factor weighs against finding that Mr. Diaz's speedy trial rights were violated. *Banks*, 761 F.3d at 1183.

### C.    Assertion of Right

The third *Barker* factor asks whether the defendant asserted his right to a speedy trial. *Barker*, 407 U.S. at 529. The Tenth Circuit has placed strong weight on this factor. *Margheim,* 770 F.3d at 1328. A defendant's obligation "is not satisfied merely by moving to dismiss after the delay has already occurred." *Batie*, 433 F.3d at 1291. "The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Id.* "While a defendant who fails to demand a speedy trial does not inherently waive that right, [the Tenth Circuit has] emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012). "Thus, if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against the defendant." *Id.*

"The third *Barker* factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right." *United States v. Black,* 830 F.3d 1099, 1120 (10th Cir. 2016). As noted above, former defense counsel filed 11 written motions to continue, one oral motion at a pretrial conference six days prior to trial, and one written motion to withdraw counsel one week ahead of trial. While the defense argues that these actions cannot be imputed to Mr. Diaz, the Court cannot find any legal support for this proposition, especially since at least five of the motions explicitly state that Mr. Diaz agreed with the continuance and would not be prejudiced by it.

The government notes that Mr. Diaz attended a basketball game four days after his counsel represented that he was too ill to proceed with trial, Doc. 157 at 17, behavior which, far from evincing a desire to go to trial with dispatch, demonstrates the opposite. Regardless of Mr. Diaz's attendance at a basketball game, his counsel has submitted medical records that confirm that he was in fact ill. Doc. 161- Exh. A. Based on the record, the Court cannot determine whether Mr. Diaz deliberately avoided trial when his counsel moved to continue at the November 30, 2022 pretrial conference. The Court need not resolve the issue however, as his 12 other motions to continue provide sufficient evidence that Mr. Diaz did *not* assert his right to speedy trial and did *not* behave in a way the communicated a desire to go to trial. Accordingly, the third *Barker* factor weighs heavily against finding that Mr. Diaz's speedy trial rights were violated, as his "behavior during the course of litigation" did not evince "a desire to go to trial with dispatch." *Batie,* 433 F.3d at 1291.

### D.   Prejudice

The fourth *Barker* factor is prejudice. *Barker,* 407 U.S. at 529. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Toombs,* 574 F.3d at 1275.

Prejudice is assessed "in light of the interest that the speedy trial right was designed to protect." *Seltzer,* 595 F.3d at 1179. These interests include: "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility the defense will be impaired." *Id.* at 1179–80 (citing *Barker,* 407 U.S. at 532). "The most important of these interests is the impairment or hindrance of the defense." *Toombs,* 574 F.3d at 1275. "Because the seriousness of post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor." *Jackson v. Ray,* 390 F.3d at 1254, 1264 (10th Cir. 2004).

Here, the defense argues that two of the *Barker* interests are implicated: the minimization of anxiety and concern, and the minimization of the possibility the defense will be impaired. Doc. 143 at 8. Specifically, the defense argues that Mr. Diaz has been prejudiced because he "has been oppressed and forced to remain under the anxiety of an indictment that carries a draconian minimum sentence of 10 years in federal custody." *Id.* Admittedly, Mr. Diaz has been prejudiced in this respect. *See Barker,* 407 U.S. at 537 (White, J., concurring) ("[I]nordinate delay between public charge and trial . . . may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may . . . create anxiety in him, his family, and his friends."). With respect to the second *Barker* interest, however, there is no evidence that the defense has been impaired on account of the four-year delay.  The defense argues that due to the delay, exculpatory video surveillance was lost. Doc. 143 at 8.  However, the surveillance video was from Mr. Diaz's own home and the footage was lost because it is periodically overridden "after a period of several months." *Id.* The defense fails to specify how the delay of four years in this case caused the loss of footage that was available to the defense, but unretrieved, for a few months. Thus, the Court finds that the loss of evidence is not directly attributable to the delay of trial. It is notable, then,

that "the most important" interest, hindrance to the defense, has not been implicated in this case. Nevertheless, because Mr. Diaz has been prejudiced with respect to the anxiety caused by a pending trial, the Court finds that this factor weighs in favor of Mr. Diaz, but only slightly.

The defense argues in the alternative that, even in the absence of a showing of prejudice, "due to the passage of four years, prejudice must be presumed because of the delay in bringing Mr. Diaz to trial." Doc. 143 at 9 (citing *Doggett,* 505 U.S. at 655–58). In *Doggett,* the Supreme Court held that an eight-and-a-half-year delay between the indictment and arrest of the defendant was presumptively prejudicial. 505 U.S. at 657–58.  Because the delay in *Doggett* was caused by the government's "inexcusable oversights" and the presumption of prejudice was not "persuasively rebutted," the Court found that relief was warranted. *Id.* However, the Court also stated that "to warrant granting relief," if negligence is "unaccompanied by particularized trial prejudice," it "must have lasted longer than negligence demonstrably causing such prejudice." *Id.* Further, the *Doggett* Court noted that "presumptive prejudice cannot alone carry a Sixth Amendment claim," rather "it is part of the mix of relevant facts." *Id.* at 655.

This case differs from *Doggett* in several relevant aspects. First, although the government failed to object to any of the continuances, *Toombs,* 574 F.3d at 1273, there have been no "inexcusable oversights" of the kind present in *Doggett,* where the government failed to arrest the defendant for eight-and-a-half years after his indictment. 505 U.S. at 650–51. Furthermore, the defendant in *Doggett* timely asserted his right to a speedy trial after his arrest, whereas the defense here has conceded that Mr. Diaz, until now, did not assert his right to a speedy trial. Doc. 161 at 10. Even if the facts in the instant case were analogous to those in *Doggett,* the Tenth Circuit has held that "generally, the court requires a delay of six years before allowing the delay itself to

14

constitute prejudice." *Seltzer,* 595 F.3d at 1180 n.3. The four-year delay in this case thus is insufficient to mandate a presumption of prejudice. *Doggett,* 505 U.S. at 657.

In sum, the Court recognizes that the length of the delay weighs in favor of Mr. Diaz. However, the reason for delay is primarily attributed to Mr. Diaz, who moved to continue the trial 13 times, only once joined by the government in his request. Furthermore, as the defense concedes, Mr. Diaz did not timely assert his right to a speedy trial. Although it is regrettable that the significant delay in this matter resulted in large part from former counsel's personal family problems, Mr. Diaz has provided no authority for this Court to decline to impute to Mr. Diaz his former counsel's requests for continuances, especially where the record reflects that Mr. Diaz consented to many of those requests. Lastly, Mr. Diaz has suffered some prejudice, but only one of the *Barker* interests relevant to prejudice, namely, the prolonging of anxiety and concern, is present in this case. On balance, Mr. Diaz's failure to assert his speedy trial rights and the numerous continuances that he requested outweigh the length of delay and prejudice. Thus, Mr. Diaz's Sixth Amendment right to a speedy trial has not been violated.

## II.   Dismissal Is Not Warranted Under Rule 48 of the Federal Rules of Criminal Procedure.

The defense argues that even if dismissal is not warranted under the Sixth Amendment, it is still warranted under the "more expansive" dictates of Rule 48(b). *Id.* According to the defense, the indictment must be dismissed to ensure "the orderly administration of the Court's business." Doc. 143 at 11. The Court does not agree.

Rule 48(b) states: "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48. A dismissal under Rule 48(b) is a matter addressed to the sound discretion of the trial court. *United States v. Begay,*

15

602 F.3d 1150, 1154 (10th Cir. 2010). Although Rule 48(b) is "broader in compass" than the Sixth

Amendment right to speedy trial, *United States v. Balochi,* 527 F.2d 562, 563-64 (4th Cir. 1976),

courts have examined Rule 48(b) claims under the same four-part framework used to assess Sixth

Amendment speedy trial claims. *See, e.g., United States v. Becker,* 585 F.2d 703, 708 (4th Cir.

1978) (applying the *Barker* speedy trial factors to a Rule 48(b) analysis); *United States v. Ward,*

211 F.3d 356, 362 (7th Cir. 2000) (applying the *Barker* speedy trial factors to a Rule 48(b) analysis

and noting that the rule is driven by "the same general considerations as the Sixth Amendment");

*United States v. Reumayr,* 530 F. Supp. 2d 1200, 1209 (D.N.M. 2007) (same). Thus, the four

factors discussed above apply here. In considering Mr. Diaz's Rule 48(b) claim, the Court thus

draws the same conclusion as it did above, namely that, on balance, Mr. Diaz's failure to assert his

right to a speedy trial and his numerous motions to continue outweigh the length of delay and

prejudice. Indeed, even if Rule 48(b) is not limited by the Sixth Amendment, "the Rule is

particularly focused [] on some type of fault by the government, resulting in lack of diligent

prosecution." *Reumayr,* 530 F. Supp. 2d at 1209. As noted above, the reason for delay here is

primarily attributable to Mr. Diaz rather than to a lack of diligent prosecution. Accordingly, the

Court finds that dismissal is not warranted under Rule 48(b). *See United States v. Yuan Qing

Jiang,* 214 F.3d 1099, 1101 (9th Cir. 2000) (prior to dismissing under Rule 48(b), the court must

find prosecutorial misconduct and actual prejudice to the accused); *Ward,* 211 F.3d at 362 (where

there was no evidence of purposeful delay by the prosecution, district court did not abuse its

discretion in denying motion to dismiss brought pursuant to Rule 48(b)). ̣

## III.   Dismissal of the Indictment Is Required Under the Speedy Trial Act and the Court Will Dismiss the Indictment Without Prejudice.

The defense argues that the Court violated the Speedy Trial Act because "the majority of

the extensions granted in this case cannot be excluded from the Speedy Trial Act." Doc. 143 at 14.

Specifically, the defense states that the Court failed to comply with the mandates of the Speedy Trial Act "because it does not appear from the motions or orders that the Court considered the [relevant] factors as required by 18 U.S.C. § 3161(h)(7)(B)." *Id.* As a result of this failure, the defense's argument continues, dismissal is required and must be with prejudice. *Id.* at 16.

The government disagrees for the most part but does concede that a technical violation of the Speedy Trial Act occurred when, after a contested hearing at the conclusion of which former counsel was permitted to withdraw from the case, the Court entered a text-only order on April 6, 2023 vacating the existing trial date, without stating reasons relevant to the Speedy Trial Act either in the order or on the record during the hearing. The Court finds that, while it did not violate the Speedy Trial Act in granting Mr. Diaz's 11 written motions to continue, it did violate the Speedy Trial Act when it vacated the trial in its April 6, 2023 text-only order without stating its reasons for doing so. The Court will dismiss the indictment on this basis but, for the reasons set forth below, the dismissal will be without prejudice.

### A. Relevant Law

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." *Toombs,* 574 F.3d at 1268 (quoting *United States v. Thompson,* 524 F.3d 1126, 1131 (10th Cir. 2008)). It requires that a defendant's trial start "within seventy days" from the filing of the indictment or the defendant's initial appearance, whichever occurs last. 18 U.S.C. § 3161(c)(1). Excluded from the seventy-day requirement is "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). When

considering whether to grant a continuance under § 3161(h)(7)(A), courts are instructed to consider

the following relevant factors, among others:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely
> to make a continuation of such proceeding impossible, or result in a miscarriage of
> justice;

> (ii) Whether the case is so unusual or so complex, due to the number of defendants,
> the nature of the prosecution, or the existence of novel questions of fact or law, that
> it is unreasonable to expect adequate preparation for pretrial proceedings or for the
> trial itself within the time limits established by this section; . . .

> (iv) Whether the failure to grant such a continuance in a case which, taken as a
> whole, is not so unusual or complex as to fall within clause (ii), would deny the
> defendant reasonable time to obtain counsel, would unreasonably deny the
> defendant or the Government continuity of counsel, or would deny counsel for the
> defendant or the attorney for the Government the reasonable time necessary for
> effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B). "Th[e] [ends-of-justice] exception to the otherwise precise

requirements of the Act was meant to be a rarely used tool for those cases demanding more flexible

treatment." *United States v. Doran,* 882 F.2d 1511, 1515 (10th Cir. 1989). When granting ends-

of-justice continuances, the district court must "make clear on the record its reasons." *Toombs,*

574 F.3d at 1269. Further, "the record must clearly establish the district court considered the proper

factors at the time such a continuance was granted." *United States v. Gonzales,* 137 F.3d 1431,

1435 (10th Cir. 1998). However, "the district court need not articulate facts which are obvious and

set forth in the motion for the continuance itself." *United States v. Occhipinti,* 998 F.2d 791, 797

(10th Cir. 1993).

If a defendant is not brought to trial within seventy days, as extended by the excluded time,

the "indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). "In determining

whether to dismiss the case with or without prejudice, the court shall consider, among others, each

of the following facts: the seriousness of the offense; the facts and circumstances of the case which

led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial

Act] and on the administration of justice." *Id.*

> **B.      The Court Did Not Violate the Requirements of the Speedy Trial Act by
> Granting Mr. Diaz's 11 Written Motions to Continue.**

The defense argues that "the majority of the extensions granted in this case cannot be

excluded from the Speedy Trial Act calculations." Doc. 143 at 14. Specifically, the defense takes

issue with the extensions granted as a result of the first motion to continue filed by Michael Davis

[Doc. 18] and all of Mr. Blackburn's motions to continue [Docs. 24, 28, 33, 35, 38, 41, 45, 47].

Doc. 161 at 13–15.

Mr. Davis filed Mr. Diaz's first motion to continue on October 23, 2019. Doc. 18. In this

motion, Mr. Davis stated that Mr. Diaz had been arraigned on October 3, 2019 and since then,

counsel had received approximately 150 pages of documents including tax records, business

documents, DEA reports, and search warrants. *Id.* at 2. He also represented that the government

had seized five of Mr. Diaz's cellphones and that the extraction of evidence from the phones would

take weeks to complete. *Id.* Because not all of the discovery had been disclosed, Mr. Davis stated

that more time was required for the defense to review the evidence and file pretrial motions. *Id.*

Mr. Blackburn's first motion was filed on January 7, 2020, when trial was scheduled for

January 27, 2020. Doc. 24. In his motion, Mr. Blackburn noted that he had entered his appearance

in this matter on November 15, 2019 and needed additional time to review the initial discovery,

which included tax records, business documents, DEA reports, and search warrants. *Id.* at 2. He

also stated that the government had provided more recent discovery on December 7, 2019, and

that he would need time to review that additional discovery. *Id.* He represented that a continuance

was necessary for counsel to discuss plea negotiations, file pretrial motions, and complete an

investigation into the allegations and charges against Mr. Diaz. *Id.*

19

Three of Mr. Blackburn's motions to continue were filed during the period in which jury trials were suspended due to COVID-19 [Docs. 28, 33, 38]. Because any continuances granted during this period were excluded from the Speedy Trial Act by Administrative Order, the Court necessarily did not violate the Act by granting the continuances requested by Mr. Blackburn during that period.

On October 5, 2020, Mr. Blackburn filed another motion to continue the trial, which had been reset for October 26, 2020. Doc. 35.  In this motion, Mr. Blackburn represented that since June of 2020, he had been dealing with a family emergency concerning his elderly uncle who lived in Oklahoma City. *Id.* at 4. Mr. Blackburn stated that after funeral services were held in August, he had to quarantine. *Id.* He also stated that he had recently had oral surgery and was still recovering. *Id.* Additionally, Mr. Blackburn stated that Mr. Diaz had three civil forfeiture matters scheduled for a settlement conference on December 1, 2020. *Id.* As a result of the logistical difficulties presented by the pandemic, Mr. Blackburn's family matters, and the civil forfeiture cases, Mr. Blackburn indicated that he needed more time to file pre-trial motions, investigate the case, and engage in plea negotiations with the government. *Id.*

 On April 23, 2021, Mr. Blackburn filed another motion to continue, in which he stated that "counsel for Defendant Diaz has been consumed since late February 2021 with a private matter concerning counsel's mother." Doc. 41 at 4. He elaborated that he and his wife were performing daily caretaking duties for his mother. *Id.* Furthermore, he stated that his only employee resigned earlier that month and that "counsel has literally been doing everything possible to keep his office running while trying to hire a new employee." *Id.* As a result of the loss of his employee, Mr. Blackburn represented that he had missed deadlines in other cases and did not have any deadlines written on his calendar for Mr. Diaz's case. *Id.* Because of these circumstances, Mr. Blackburn

stated that he would need more time to file pretrial motions and effectively prepare for trial. *Id.* at 5.

On August 9, 2021, Mr. Blackburn filed another motion to continue, again citing logistical challenges associated with COVID-19 and issues related to the loss of his employee in April of 2021. Doc. 35 at 3–5. He further noted that because the New Mexico state courts had opened again, he had another pending jury trial and administrative hearings in August and September, and a suppression motion in October for a case that had been pending since 2014. *Id.* As a result of these circumstances, Mr. Blackburn represented that he needed additional time to prepare and file pretrial motions and continue to investigate the case. *Id.*

On September 13, 2021, Mr. Blackburn filed another motion to continue, stating that "counsel for Defendant Diaz has been consumed since early August 2021 through today's date with a family emergency concerning his 91-year-old mother." Doc. 47 at 3. Mr. Blackburn further stated that he needed to provide daily care for his mother and that he had been obligated to continue several other matters both in state and federal court as a result. *Id.* Mr. Blackburn also generally cited to logistical difficulties arising from the COVID-19 pandemic. *Id.* He stated that he would need additional time to prepare and file pretrial motions and continue to investigate the case. *Id.*

Lastly, Mr. Blackburn filed a motion on December 27, 2021 to vacate the then-existing January 31, 2022 trial setting. Doc. 53. Mr. Blackburn stated that he had a firm trial setting on another federal case on February 7, 2020. *Id.* at 2. He represented that the other case involved the robbery and death of a gas station attendant and that his co-counsel had recently withdrawn from the case. *Id.* Thus, he wrote "counsel Billy R. Blackburn must now turn his entire attention" to the other pending federal case. *Id.* at 3. Mr. Blackburn also generally cited to logistical difficulties arising from the COVID-19 pandemic. *Id.*

The Court entered Orders granting each of Mr. Blackburn's written, unopposed motions.

Each of the Court's Orders contained the following language:

> THIS MATTER is before the Court on defendant's Unopposed Motion to Continue Trial. The Court has weighed the representations made in the motion and finds granting a continuance to resolve these issues outweighs the public and defendant's interest in a speedy trial pursuant to 18 U.S.C. § 3161, for the reasons set forth in the defendant's Motion.

> Conducting a trial in the face of these facts would be contrary to the interests of justice. *Zedner v. United States,* 126 S. Ct. 1976 (2006).

Docs. 25, 37, 39, 43, 46, 48, 55. The defense contends that these Orders were conclusory and insufficient under the Speedy Trial Act, comparing this case to *Toombs,* where the Tenth Circuit found that the district court violated the Speedy Trial Act and dismissed the indictment. Doc. 143 at 8. In *Toombs,* the defense had filed seven motions to continue. 574 F.3d at 1269. The Tenth Circuit found that the Speedy Trial Act was violated because the district court failed to make a record "upon which adequate findings could be based" to justify an ends-of-justice continuance. *Id.* at 1272. The Court took issue with a particular motion in which the defense stated simply "that additional discovery has recently been disclosed to Defendant requiring additional investigation." *Id.* at 1269. Because the district court relied on the defense's paltry representations, the Tenth Circuit found that there was "absolutely no explanation in the record for why the events [listed in the motion] resulted in defense counsel requiring additional time to prepare for trial." *Id.* at 1272. The Court further stated that "the district court and government are no less responsible under the Speedy Trial Act merely because it is a defendant who requests a continuance." *Id.* The *Toombs* Court thus found that the defendant's rights under the Speedy Trial Act had been violated in part because "the government was passive" and "never objected to any of the continuances or so much as inquired before the court into their necessity." *Id.*

The instant case is distinguishable from *Toombs* because, as described above, Mr. Davis's first motion to continue and all of Mr. Blackburn's motions provided specific and clear reasons why counsel required more time to prepare for trial. The motion in *Toombs* simply stated that the defense had received additional discovery and additional investigation was required. 574 F.3d at 1269. In contrast, the motions at issue here described the type and volume of discovery received (*e.g.,* tax records, DEA reports, search warrants, media from phone extractions) as well as the myriad of circumstances affecting Mr. Davis's and Mr. Blackburn's ability to complete specific tasks (*e.g.,* file pre-trial motions, conduct investigation, engage in plea negotiations). *See* Docs. 18, 24, 35, 41, 45, 47, 53. With respect to Mr. Blackburn's motions, unlike in *Toombs* where the government did not inquire as to the necessity of the continuance, here each of the motions demonstrated that the government had been made fully aware of the reasons and necessity for additional time. *Id.*

Furthermore, although the Court's Orders granting the motions were not lengthy, the Tenth Circuit has held that to comply with the Act, "the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself." *Occhipinti,* 998 F.2d at 797. By adopting the representations made in each motion to continue, the Court, in compliance with the dictates of *Toombs,* created a clear record of "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Toombs,* 574 F.3d at 1273. Therefore, the extensions resulting from Mr. Davis's first motion to continue and Mr. Blackburn's motions to continue are properly excluded from the Speedy Trial Act calculations.

**C.    The Court Violated the Speedy Trial Act in its Order Entered on April 6, 2023.**

The government admits that there has been a technical violation of the Speedy Trial Act in

this case and, as a result, indicates that dismissal of the indictment without prejudice is warranted. Doc. 157. The defense did not specifically raise this issue in its motion or respond to the government's argument on this point. *See* Doc. 143. The Court agrees with the government that there has been a technical violation and that the correct remedy is dismissal of the indictment without prejudice.

After a contested hearing on April 5, 2023, the Court granted Mr. Blackburn's opposed motion to withdraw from this case. Doc. 150. During that hearing, the Court did not make findings relevant to the Speedy Trial Act and Mr. Blackburn did not file a motion to continue in conjunction with his motion to withdraw. On April 6, 2023, the Court entered a text-only order vacating the existing trial date without stating its reasons for doing so. Doc. 121. Thus, the 65 days between the trial date (April 10, 2023) and the United States' Motion for Hearing Pursuant to *Wood v. Georgia* (June 14, 2023) cannot be excluded under the Act. *See* 18 U.S.C. § 3161(h)(7)(A) (excluding delays resulting from an "ends-of-justice" continuance); 18 U.S.C. § 3161(h)(1)(D) (excluding delays resulting from "any pretrial motion"). Additionally, there were 29 nonexcludable days between the indictment and the first continuance motion and 46 nonexcludable days between the Court's order on the United States' Motion for Hearing Pursuant to *Wood v. Georgia* (June 14, 2023) and the defense's filing of its first pretrial motions (October 1, 2023)*,* resulting in a total of 140 nonexcludable days. Doc. 157 – Exh. 8. Thus, the total delay violates the Speedy Trial Act's requirement that a defendant be tried within 70 days from the filing of the indictment. 18 U.S.C. § 3161(c)(1). Accordingly, the Court must dismiss the indictment. *United States v. Cano-Silva,* 402 F.3d 1261, 1269 (10th Cir. 2009).

## D.    The Indictment Will Be Dismissed Without Prejudice.

In deciding whether to dismiss a case with or without prejudice, the court must consider,

among others, the following factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the [Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). The Supreme Court has indicated that prejudice to the defendant should also be considered in determining whether to dismiss an indictment with or without prejudice. *See United States v. Taylor,* 487 U.S. 326, 333-34 (1988). Dismissal with prejudice is a "more severe sanction" that "should be reserved for more egregious violations." *Cano-Silva,* 402 F.3d at 1035.

Here, the defense concedes that drug trafficking is considered a serious crime under the Speedy Trial Act. Doc. 143 at 16. In addition to the drug charge, Mr. Diaz is charged with Possession of a Firearm in Furtherance of a Drug Trafficking Crime pursuant to 18 U.S.C. § 924(c)(1)(A), which is also a serious offense. *See United States v. Jones,* 213 F.3d 1253, 1256 (finding that several firearm offenses were serious). When a court "determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *United States v. Saltzman,* 984 F.2d 1087, 1092 (10th Cir. 1993). However, "the seriousness of the charges does not automatically justify dismissal without prejudice." *Id.* at 1257.  Instead, the seriousness of the offense is weighed against the severity of the delay. *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir. 1984). In *Jones,* the Tenth Circuit held that the seriousness of several robbery charges was not outweighed by a delay of 414 non-excludable days, noting that the crimes "involved intimidation, violence, and use of a firearm." 213 F.3d at 1257.

If convicted, Mr. Diaz would face two five-year mandatory minimum sentences. 21 U.S.C. § 841(b)(1)(B); 18 U.S.C. 924(c)(1)(A)(i). This indicates a strong intention by Congress to treat the offenses as serious ones. *United States v. Koerber,* 813 F.3d 1262, 1276 (10th Cir 2016) ("One way the district court can measure the seriousness of an offense is by considering the length of the

sentence Congress adopted for the offense."). Nevertheless, the crimes charged are not crimes of violence, and thus are less serious for purposes of the instant calculation than the statutory punishment might suggest at first blush. *Jones,* 213 F.3d at 1257. The delay of twice the 70-day limit imposed by the Speedy Trial Act, on one side of the scale, seems to weigh just as heavily as does the seriousness of the offense, on the other side of the scale. *Cf. United States v. Garcia-Conejo,* No. 07-CR-2051, 2007 WL 5685151, at *10 (D.N.M. Nov. 26, 2007) (delay of only 13 days did not outweigh seriousness of drug trafficking charges). Therefore, neither the length of the delay nor the seriousness of the offense tips the balance in either direction.

"In evaluating the circumstances precipitating the dismissal, 'the court is to focus on the culpability of the delay-producing conduct.'" *Jones,* 213 F.3d at 1257 (quoting *Saltzman,* 984 F.2d at 1093). The facts and circumstances of the 140-day delay admittedly favor Mr. Diaz. After Mr. Blackburn's last-minute withdrawal, the Court did not put, in a written order or on the record, its reasons for vacating the trial date as required by the Speedy Trial Act. Because "it is the responsibility . . . of the district court . . . to protect the interests of the public by ensuring adherence to the requirements of the Speedy Trial Act," the Court had a duty to make a clear record and comply with the Act. *Toombs,* 574 F.3d at 1272. Thus, this factor weighs in favor of a dismissal with prejudice.

Regarding the impact of reprosecution on the Speedy Trial Act and the administration of justice, the defense argues that the delay has "failed to serve the public's interest because of the resulting failure to bring prompt criminal proceedings." Doc. 143 at 18. Although the Court takes the instant violation seriously, the Tenth Circuit has noted that "dismissal with prejudice is not the only method for a court to show that violations must be taken seriously." *Jones,* 213 F.3d at 1257. Indeed, a dismissal without prejudice still requires the government to go through the process of re-

indicting Mr. Diaz. *Id.* Furthermore, the government has represented that it will promptly seek a new indictment against Mr. Diaz and that the discovery largely will be the same. Doc. 157 at 29. There is thus no indication that reprosecution will result in further violations of the Act once Mr. Diaz is re-indicted.

Lastly, the Court considers prejudice to the defendant. *Taylor,* 487 U.S. at 333–34. The defense argues that it has been prejudiced by the loss of evidence and restrictions to Mr. Diaz's liberty while under pre-trial supervision. Doc. 143 at 19–20. As noted above, the loss of video footage that was in Mr. Diaz's possession for a few months until it was deleted according to the routine functioning of his own surveillance camera cannot be attributed to any delay caused by the government or the Court. Further, as the defense itself recognizes, "the longer the delay, the greater the presumptive or actual prejudice to the defendant." Doc. 143 at 20 (quoting *Taylor,* 487 U.S. at 340). While mindful of the hardships attendant to remaining on pre-trial release, the only delay at issue in the analysis here is the 140 non-excludable days that passed after April 6, 2023—not the four years that have elapsed since Mr. Diaz's indictment. The defense has failed to address, much less establish with any specificity, how the 140-day delay relevant to the instant Speedy Trial Act violation has caused material prejudice. *Jones,* 213 F.3d at 1258 (dismissing without prejudice in part because of the defendant's "inability to demonstrate prejudice"). Thus, this factor weighs in favor of dismissal without prejudice.

In sum, the only factor that weighs in favor of dismissal with prejudice is the facts and circumstances of the delay. In contrast, the negligible impact that reprosecution will have on the administration of the Speedy Trial Act and the lack of demonstrable prejudice to Mr. Diaz from the 140-day delay weigh strongly in favor of dismissal without prejudice. *See Jones,* 213 F.3d at 1258 (dismissal with prejudice was not warranted given the "government's relative lack of

culpability" and the defendant's "inability to demonstrate prejudice"). For this reason, the Court finds that the proper remedy here is to dismiss the indictment without prejudice.

**CONCLUSION**

The Court finds that Mr. Diaz's Sixth Amendment right to a speedy trial has not been violated and that dismissal is not warranted under Rule 48(b) of the Federal Rules of Criminal Procedure. However, the Court finds that, under *Toombs*, a technical violation of the Speedy Trial Act occurred as outlined above, and that dismissal of the indictment is warranted on that basis. Because the violation did not result in demonstrable prejudice to Mr. Diaz, and because reprosecution will not impact the administration of the Speedy Trial Act, dismissal will be without prejudice.

ENTERED this 21st day of December 2023.

_____

MARTHA VAZQUEZ

SENIOR UNITED STATES DISTRICT JUDGE